# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM R. MCGEE, <br><br> Plaintiff, <br> v. <br> MERCEDES-BENZ USA, LLC, <br><br> Defendant. | Case No.: 19cv513-MMA (WVG) <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. No. 22] |

Plaintiff William R. McGee ("Plaintiff") commenced the instant action against Defendant Mercedes-Benz USA, LLC ("Defendant") in San Diego County Superior Court. *See* Doc. No. 1-2 (hereinafter "Compl."). Plaintiff asserts two claims for the breach of express and implied warranties arising from his purchase of a new Mercedes vehicle pursuant to California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1790 *et seq. See id.* On March 18, 2019, Defendant removed the action to this Court based on diversity jurisdiction. *See* Doc. No. 1. Defendant now moves for summary judgment. *See* Doc. No. 22. Plaintiff filed an opposition, to which Defendant replied. *See* Doc. Nos. 23, 24. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 25. For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment.

## BACKGROUND[1]

This action arises out of Plaintiff's purchase of a 2015 Mercedes-Benz C350c (the "vehicle") on or about December 29, 2015. Plaintiff purchased the vehicle for his wife, Arlene McGee. Plaintiff received a 4-year/50,000-mile warranty from Defendant with the purchase of the vehicle.[2] At the time of purchase, the vehicle had approximately fifty-two (52) miles on it.

The vehicle is subject to National Highway Traffic Safety Administration ("NHTSA") Recall No. 19v010 for the recall of the passenger-side Takata airbag inflator ("Takata Recall"). In February 2019, Plaintiff received a Takata Recall interim notice letter. *See* Doc. No. 22-6. The notice provides that Mercedes-Benz USA "has decided that a defect, which relates to motor vehicle safety, exists in certain Model Year 2010-2017 C-Class, E-Class Coupe/Cabrio, GLK-Class, and SLS-Class Mercedes-Benz vehicles. Our records indicate that your vehicle is included in the affected population of vehicles." *Id.* at 1.[3] Specifically, "[u]nder certain circumstances during a crash that necessitates frontal airbag deployment, the defect in your passenger-side airbag inflator may cause the airbag to explode." *Id.* "**Unfortunately, replacement parts are not yet available for your vehicle, but we will contact you again once parts become available**." *Id.* (emphasis in original).

Shortly after receiving the Takata Recall interim notice letter, Plaintiff presented the vehicle to Defendant's authorized service center for repair of the passenger-side

---

[1] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. Disputed material facts are discussed in further detail where relevant to the Court's analysis. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

[2] Defendant's express warranty provides that, for the original owner of a new Mercedes-Benz vehicle, "any authorized Mercedes-Benz Center will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period." Doc. No. 23-4 (hereinafter "Plaintiff Decl."), Ex. A.

[3] Citations to this document refer to the pagination assigned by the CM/ECF system.

Takata airbag inflator. However, the Takata airbag replacement parts are not yet available for the vehicle and the service repair center was unable to repair the passenger-side airbag. Since purchasing the vehicle, Plaintiff and his wife have continued to drive with passengers in the front passenger seat—including after receiving notice of the Takata Recall. Plaintiff and his wife have not experienced any issue with the alleged Takata airbag inflator defect.

Plaintiff claims that due to the passenger-side airbag defect, he and his wife have lost confidence and peace of mind in the safety of the vehicle. Plaintiff asserts that the nonconformity "substantially impairs the use, value and/or safety of the Subject Vehicle to Plaintiff." Compl. ¶ 12. Plaintiff seeks rescission of the contract and restitution of all consideration, actual compensatory and general damages, and a civil penalty. *See* Compl.

### **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not

appropriate. *Id.* at 324. The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), *cert. denied*, 555 U.S. 827 (2008) (internal quotation marks omitted).

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## DISCUSSION

**1.   Defendant's Evidentiary Objections**

As a preliminary matter, Defendant objects to two portions of Mrs. McGee's declaration, dated February 14, 2020, submitted in support of Plaintiff's opposition to the instant motion. *See* Doc. No. 24-2. First, Defendant objects to two sentences in the third paragraph of Mrs. McGee's declaration on hearsay grounds. *See id.* at 1. In the relevant portion of her declaration, Mrs. McGee states that her service advisor, Mr. Islas, "advised me that he was aware of the Subject Recall but that the parts necessary to repair the passenger-side airbag defect were not available. Mr. Islas advised me that we would be contacted by Mercedes-Benz when the parts were available to repair the airbag." Doc. No. 23-3 (hereinafter "A. McGee Decl.") ¶ 3.

Hearsay is a statement made out of court and offered for the truth of the matter asserted therein. *See* Fed. R. Evid. 801(c). Unless evidence satisfies an exception to the hearsay rule, or can be classified as non-hearsay, it is inadmissible at trial. *See* Fed. R. Evid. 802.

Here, Defendant's hearsay objection is not well-taken. The objected-to statements could be presented in an admissible form at trial. For example, Mrs. McGee could rephrase her testimony to avoid any hearsay problem. Moreover, Plaintiff presents essentially the same information in his declaration, which Defendant does not object to.

*See* Plaintiff Decl. ¶ 5.  Thus, the Court may consider this evidence in the summary judgment context.  *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).  As such, the Court **OVERRULES** Defendant's hearsay objection.

Second, Defendant objects to the fifth paragraph of Mrs. McGee's declaration, in its entirety, pursuant to the sham affidavit rule.  Specifically, Defendant claims that Mrs. McGee's statements contradict her prior deposition testimony.  *See* Doc. No. 24-2.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  The Ninth Circuit has fashioned "two important limitations on a district court's discretion to invoke the sham affidavit rule." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).  First, the rule does not apply automatically to every case where a contradictory affidavit is introduced; rather, "the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.* (quoting *Kennedy*, 952 F.2d at 267).  Second, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-99.

In her declaration, Mrs. McGee states that "[s]ince hearing of the Subject Recall . . ., neither my daughter nor my mother will ride in the subject vehicle as a passenger and I must take an alternate vehicle when planning to travel with either of them."  A. McGee Decl. ¶ 5. Defendant claims that this paragraph contradicts Mrs. McGee's September 2019 deposition testimony, where Mrs. McGee estimated that her mother rode as a passenger in the vehicle "[p]robably three" times in the last month.  Doc. No. 24-3 at 19.[4]  Mrs. McGee further testified that her daughter, Serena, rode as a passenger in the vehicle, "[p]robably six" times in the last month.  *Id.* at 20.  Mrs. McGee indicated that the last month was "[p]retty typical" for her.  *Id.*

Here, the Court finds that both limitations are satisfied.  On September 4, 2019,

---

[4] Citations to this document refer to the pagination assigned by the CM/ECF system.

just seven months after learning of the Takata Recall, Mrs. McGee testified under oath that her mother and daughter were passengers in her vehicle on several occasions within the last month. However, in support of Plaintiff's opposition to the instant motion, Mrs. McGee declares that since learning of the recall, "neither my daughter nor my mother will ride in the subject vehicle as a passenger and I must take an alternate vehicle when planning to travel with either of them." A. McGee Decl. ¶ 5. Mrs. McGee offers no explanation for the change in her testimony. As such, the Court finds that the contradictions in Mrs. McGee's declaration are a "sham," and that the inconsistencies between the deposition testimony and subsequent declaration are "clear and unambiguous" and not just "minor inconsistencies that result from an honest discrepancy, mistake, or newly discovered evidence." *Van Asdale*, 577 F.3d at 998-99. Accordingly, the Court **SUSTAINS** Defendant's objection to the fifth paragraph of Mrs. McGee's declaration pursuant to the sham affidavit rule.

**2. Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment as to Plaintiff's claims, arguing that the "existence of the Takata Recall that cannot immediately be performed [does not] give[] rise to a breach of the Song-Beverly Consumer Warranty Act." Doc. No. 22 at 1. In opposition, Plaintiff asserts that triable issues of fact preclude summary judgment as to his express and implied warranty claims. *See* Doc. No. 23. The Court addresses Plaintiff's claims in turn.

a. <u>Breach of Express Warranty</u>

Defendant first argues that Plaintiff's breach of express warranty claim fails because Plaintiff presents insufficient evidence to satisfy the nonconformity and failure to repair elements. *See* Doc. No. 24 at 2, 7. In opposition, Plaintiff asserts that the Takata Recall "creates a triable issue of fact for the Defendant's violation of express warranty under the Song-Beverly Act." Doc No. 23 at 6.

A plaintiff pursuing an action under the [Song-Beverly] Act has the burden

> to prove that (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element).

*Oregal v. American Isuzu Motors, Inc.*, 109 Cal. Rptr. 2d 583, 588 (Ct. App. 2001).

Among other things, section 1793.2 (or the "Lemon Law" of the Song-Beverly Act) requires manufacturers to replace a nonconforming vehicle or reimburse the buyer if the vehicle cannot be repaired after a reasonable number of attempts. *See Nat'l R.V., Inc. v. Foreman*, 34 Cal. App. 4th 1072, 1077 (1995). A "nonconformity" under the Act is a defect that substantially impairs the use, value, or safety of a vehicle to the buyer. Cal. Civ. Code § 1793.22(e). Goods shall be serviced or repaired within a reasonable time— typically "within 30 days"—by the manufacturer or its representatives. Cal. Civ. Code § 1793.2(b). Where a distributor is unable to conform a vehicle to warranty, the distributor must "promptly replace the new motor vehicle . . . or make restitution to the buyer." Cal. Civ. Code § 1793.2(d).

Here, the Takata Recall interim notice letter alone is insufficient to satisfy the nonconformity element. First, Plaintiff cites to no case law to support his proposition that the recall letter constitutes an admission by Defendant that the vehicle has a nonconformity covered by the express warranty. Second, the language of the Takata Recall interim notice letter provides that a defect exists in *certain* Mercedes vehicles. *See* Doc. No. 22-6. While the company's "records indicate that [Plaintiff's] vehicle is included in the affected population of vehicles," under "certain circumstances during a crash that necessitates frontal airbag deployment, the defect in your passenger-side airbag inflator *may* cause the airbag to explode." *Id.* at 1 (emphasis added). Third, Plaintiff presents no evidence that the passenger airbag is actually defective. In fact, it is undisputed that alleged Takata airbag defect has never manifested in Plaintiff's vehicle,

despite being driven for nearly forty thousand miles over the course of several years. Finally, it is undisputed that the vehicle has not presented any other problems that have substantially impaired the vehicle's use, value, or safety. As such, Plaintiff cannot satisfy the nonconformity element. *See Adams v. FCA US LLC*, No. CV 16-4317-JFW (MRWx), 2016 WL 9136170, at *5 (C.D. Cal. Dec. 27, 2016) ("[B]ecause Plaintiff experienced *no* defects in her Jeep, only potential defects that were the subject of the recall notices . . ., Plaintiff cannot satisfy the nonconformity element.") (emphasis in original).

Even if Plaintiff could satisfy the nonconformity element, Plaintiff is unable to satisfy the failure to repair element. Plaintiff maintains that the undisputed evidence reveals that Defendant "has not and cannot repair the Subject Vehicle. As such, the evidence in the present case satisfies the failure to repair element." Doc. No. 23 at 9-10. Plaintiff, however, overlooks the Song-Beverly Act's exception for delays due to "conditions beyond the control of the manufacturer or its representatives." Cal. Civ. Code § 1793.2(b). Such conditions "serve to extend this 30-day requirement. Where delay arises, conforming goods shall be tendered as soon as possible following termination of the condition giving rise to the delay." Cal. Civ. Code § 1793.2(b).

It is undisputed that the remedy parts for Plaintiff's passenger airbag are not yet available. Additionally, it is undisputed that the parts are unavailable due to conditions beyond Defendant's control. The Takata Recall interim notice letter states, **"[u]nfortunately, replacement parts are not yet available for your vehicle, but we will contact you again once parts become available. You may visit www.mbusa.com/recall and enter your vehicle model, Model Year, and State your vehicle is registered to check when remedy parts will be available**." Doc. No. 22-6 at 1 (emphasis in original). "As soon as a suitable replacement part is available for your vehicle, we will send another letter notifying you to bring your vehicle to your local Authorized Mercedes-Benz dealer to repair your vehicle **free of charge**." *Id.* (emphasis in original). As such, the cases Plaintiff cites to wherein dealers refused to perform a

repair are inapposite. Therefore, Plaintiff cannot satisfy the failure to repair element. *See* Cal. Civ. Code § 1793.2(b).

Accordingly, because Plaintiff cannot satisfy either the nonconformity or failure to repair elements, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's breach of express warranty claim under the Song-Beverly Act.

b. Breach of Implied Warranty

Second, Defendant asserts that Plaintiff's breach of implied warranty claim fails because the vehicle experienced no defected-related symptoms and is fit for its ordinary purpose of driving. *See* Doc. No. 22 at 10. Defendant further contends that summary judgment is appropriate because the vehicle did not manifest any recall-related defects or symptoms during the Song-Beverly Act's implied warranty period. *See id.* Plaintiff claims that in light of the Takata Recall interim notice letter, "there is a triable issue of material fact that the Subject Vehicle was fit for the ordinary purposes for which passenger vehicles are used at the time it was sold to Plaintiff." Doc. No. 23 at 13.

An implied warranty of merchantability accompanies every retail sale of consumer goods in the state, unless specific disclaimer methods are followed. *See* Cal. Civ. Code § 1792; *Music Acceptance Corp. v. Lofing*, 32 Cal. App. 4th 610, 619 (1995). An implied warranty of merchantability guarantees that "consumer goods[:]" (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label. Cal. Civ. Code § 1791.1(a). The implied warranty of merchantability "arises by operation of law" and "provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1295-96 (1995).

The basic inquiry is whether the vehicle was fit for driving. *See Keegan v. Am. Honda Motor co., Inc.*, 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012). "A vehicle that has been materially damaged will not 'pass without objection' in the trade as a 'new car.'" *Id.* at 946 (citing cases). Thus, California courts "'reject the notion that merely because a

vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purposes.'" *Id.* (quoting *Isip v. Mercedes-Benz USA, LLC*, 65 Cal. Rptr. 3d 695, 700 (Ct. App. 2007)). "The core test of merchantability is fitness for the ordinary purpose for which goods are used." *Isip*, 65 Cal. Rptr. 3d at 700. "Such fitness is shown if the product is 'in safe condition and substantially free from defects' . . . ." *Mexia v. Rinker Boats Co., Inc.*, 95 Cal. Rptr. 3d 285, 289 (Ct. App. 2009) (quoting *Isip*, 65 Cal. Rptr. 3d at 700).

The duration of the implied warranty of merchantability is no more than one year following the sale of the good. *See* Cal. Civ. Code § 1791.1(c). However, "[t]here is nothing [in the text of the statute] that suggests a requirement that the purchaser discover and report to the seller a latent defect within that time period." *Mexia*, 95 Cal. Rptr. 3d at 295; *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015).

Here, the Court finds that the existence of the Takata Recall, without any related malfunction, is insufficient to raise a genuine dispute of material fact that the vehicle was unfit for its intended use. "[T]he existence of a safety recall does not adequately allege a substantial safety hazard existed." *Gutierrez v. Carmax Auto Superstores Cal.*, 248 Cal. Rptr. 3d 61, 75 (Ct. App. 2018). Moreover, as noted above, despite owning and driving the vehicle for nearly four years, Plaintiff and his wife never experienced any problems relating to the Takata Recall. The Takata Recall also indicates that under certain circumstances, the passenger-side airbag *may* not deploy properly. "In asserting a warranty claim, '[i]t is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product *actually exhibited the alleged defect*.'" *Taragan v. Nissan N. Am., Inc.*, No. C 09-3660 SBA, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013) (emphasis in original) (quoting *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009)). Thus, because there is no evidence that any defect manifested in the vehicle, Plaintiff's argument that the Takata Recall interim notice letter raises a triable issue of material fact that the

vehicle was fit for its intended use is unpersuasive. *See Gutierrez*, 248 Cal. Rptr. 3d at 76 (affirming dismissal of the plaintiff's breach of implied warranty claim under the Song-Beverly Act because the plaintiff failed to adequately allege the vehicle was unfit for ordinary purposes due to the safety recall); *Taragan*, 2013 WL 3157918, at *4 ("Here, none of the Plaintiffs has actually experienced a rollaway incident. Thus, Plaintiffs' claim of defect, as pled, is theoretical.").

Finally, Plaintiff fails to present any other evidence sufficient to raise a genuine dispute of material fact that the vehicle is unfit for its ordinary purpose of providing transportation. While Plaintiff and Mrs. McGee contend that they have lost faith and confidence in the safety of the vehicle due to the Takata Recall, Plaintiff "provides no support for the proposition that a remote fear or expectation of failure is sufficient to establish non-merchantability." *Am. Suzuki*, 37 Cal. App. 4th at 1298. Importantly, Plaintiff and his wife have not claimed that they stopped using their vehicle. *See Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) ("In this case, Plaintiffs have not alleged that they stopped using their vehicles."). To the contrary, Plaintiff and his wife have continued to drive the vehicle with passengers in the front seat even *after* receiving notice of the Takata Recall, without ever experiencing any issue with the alleged Takata airbag inflator defect. "The implied warranty of merchantability requires only that a vehicle be suitable for ordinary use. It need not be perfect in every detail so long as it 'provides for a minimum level of quality.'" *Id.* (quoting *American Suzuki*, 37 Cal. App. 4th at 1296). As such, in viewing the evidence in the light most favorable to Plaintiff, Plaintiff fails to raise a genuine dispute of material fact as to the ordinary fitness of his vehicle and summary judgment is appropriate. "To hold otherwise would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized. And, compensation would have to be paid for a product 'defect' that was never made manifest, in a product that for the life of any warranty . . . performed as [the manufacturer] guaranteed it would." *Am. Suzuki*, 37 Cal. App. 4th at 1299; *see also Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1233 (N.D. Ga. 2005)

(granting summary judgment on the plaintiff's claim for breach of implied warranty where the plaintiff "does not allege that the vehicle was ever rendered inoperable, or that its capacity to operate as a means of transportation was ever disabled by defects alleged in the Complaint.").

Accordingly, because the vehicle experienced no defected-related symptoms and Plaintiff fails to raise a dispute of material fact as to the vehicle's fitness for its ordinary purpose of driving, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's implied breach of warranty claim under the Song-Beverly Act.[5]

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment as to all claims. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

Dated: March 30, 2020

_____
HON. MICHAEL M. ANELLO
United States District Judge

---

[5] As such, the Court need not reach Defendant's remaining argument regarding the timeliness of Plaintiff's breach of implied warranty claim.